IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

EAGLE TRANSPORTATION, LLC                                    PLAINTIFF

V.                                        CIVIL ACTION NO. 2:11-CV-96-KS-MTP

WILLIE SCOTT, et al.                                         DEFENDANTS

MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants in part and denies in part**
Defendant Great American Insurance Company's Motion for Summary Judgment [37]
and **denies** Plaintiff's Motion for Partial Summary Judgment [40].

I. BACKGROUND

Plaintiff holds itself out as a broker of motor transportation services. On
November 18, 2008, Plaintiff and Defendant Willie Scott, doing business as Scotty's
Trucking (hereinafter referred to collectively as "Scott"), executed a Motor Carrier
Agreement. According to the contract, Scott agreed to transport and deliver specific
commodities according to Plaintiff's instructions, on behalf of the commodities' owners
(the "shippers"). The contract also required Scott to perform his services in a good and
workmanlike manner, in accordance with the highest standards of the trade. Scott
agreed to indemnify, defend, release, and hold Plaintiff and the shippers harmless
"from and against all liability, costs and expense for loss or damage to property and/or
injury to or deaths of persons (including, but not limited to, the property and employees
of each party [to the contract]) when arising or resulting, directly or indirectly, from

any" of his acts or omissions "associated with or arising out of" the contract. The contract provided that Scott shall be liable to Plaintiff, to the extent of its interest, and to the shippers "for loss or damage to any property transported" under the contract "as set forth under 49 U.S.C. § 14706." The contract defined Scott's liability as "the full value of the damaged or lost item(s)."

Around August 7, 2009, Peco Foods, Inc. ("Peco") hired Plaintiff to transport a truckload of frozen chicken from Sebastopol, Mississippi, to Wixom, Michigan. Plaintiff then hired Scott to transport the chicken. Around August 9, 2009 – during transit – most of the cargo was damaged beyond salvage. Shortly thereafter, Defendant Great American Insurance Company ("Great American"), Scott's insurer, seized what was left of the cargo and sold it for salvage value.

Plaintiff subsequently filed a claim with Great American, requesting payment for the cargo transported by Scott. Plaintiff reimbursed its client, Peco, for the lost cargo. On July 28, 2010, Great American denied Plaintiff's claim, and issued Plaintiff a check for $2,056.25 – an amount representing the salvage value (after expenses) of the remaining cargo.

Plaintiff filed the present action in the County Court of Lamar County, Mississippi, on March 11, 2011, alleging state law claims of breach of contract and negligence against Great American, and seeking a declaratory judgment as to Great American's obligations under Scott's policy. Great American removed the case on April 25, 2011, and then answered the Complaint. It asserted a counterclaim and crossclaim for a declaratory judgment that it has no obligation under the policy to make any

2

payment to Plaintiff or Scott.

On May 4, 2012, Plaintiff filed a Motion to Remand [5], but the Court denied it, finding that Plaintiff's negligence claim against Scott was preempted by the Carmack Amendment.[1] *Eagle Transp., LLC v. Scott*, No. 2:11-CV-96-KS-MTP, 2011 U.S. Dist. LEXIS 60958, at *13 (S.D. Miss. June 7, 2011). Plaintiff subsequently filed an Amended Complaint [22], in which it asserted the same claims against Great American, in addition to a Carmack Amendment claim and breach of contract claim against Scott.

On January 25, 2012, Great American filed a Motion for Summary Judgment [37], in which it seeks a declaratory judgment that Plaintiff has no standing to recover benefits under Scott's policy. Great American also seeks a declaratory judgment that it was entitled to rescind the policy and deny any claim for the subject loss. Finally, Great American seeks summary judgment as to Plaintiff's negligence claim.

On January 30, 2012, Plaintiff filed its own Motion for Partial Summary Judgment [40], in which it seeks a declaratory judgment that the Scott's policy was effective on the date of the subject loss. Plaintiff also filed a Motion for Partial Summary Judgment [42] as to its claims against Scott.

On April 13, 2012, the Court granted in part and denied in part Plaintiff's Motion for Partial Summary Judgment as to Scott. *Eagle Transp., LLC v. Scott*, 2012 U.S. Dist. LEXIS 52107 (S.D. Miss. Apr. 13, 2012). The Court granted the motion as

---

[1] 49 U.S.C. § 14706.

to the Carmack Amendment claim, but the Court denied the motion as to the breach of contract claim. The Court entered a judgment in favor of Plaintiff against Defendants Willie Scott and Willie Scott d/b/a Scotty's Trucking in the principal amount of $49,808.19, plus pre-judgment interest and post-judgment interest.

The Court now considers the remaining dispositive motions, but it must first address its retention of jurisdiction over this matter.

## II. PENDENT JURISDICTION

"Courts are instructed to examine their jurisdiction at every stage of the litigation." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (punctuation omitted). As noted in the Court's previous order [13], the Court had jurisdiction over this because it included a "claim arising under the Constitution, laws, or treaties of the United States." *Eagle Transp., LLC*, 2011 U.S. Dist. LEXIS 60958 at *5 (quoting 28 U.S.C. § 1331). Although Plaintiff did not plead a federal claim, the Court held that its negligence claim against Scott was completely preempted by the Carmack Amendment. *Id.* at *14. Although the Court did not address the issue in its previous opinion, supplemental jurisdiction over Plaintiff's remaining state law claims was appropriate, as they "form[ed] part of the same case or controversy" as the Carmack Amendment claim, 28 U.S.C. § 1367(a), or, phrased differently, they "derive[d] from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

Of course, the Court granted Plaintiff's Motion for Summary Judgment as to its Carmack Amendment claim against Defendant Scott, disposing of the federal question.

4

*Eagle Transp., LLC*, 2012 U.S. Dist. LEXIS 52107 at *13. The Court may now either retain jurisdiction of the remaining state law claims or remand them to the state court. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). Addressing this issue, the Fifth Circuit recently held:

> Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed. Indeed, the Supreme Court has for nearly half a century cautioned federal courts to avoid needless decisions of state law . . . .
>
> We recognize that the doctrine of pendent jurisdiction is a doctrine of flexibility. A district court has wide discretion in deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated. Thus, we are right to hesitate in rejecting the district court's exercise of its discretionary authority, as the general rule of remanding state law claims to state court after all federal claims have been eliminated is neither mandatory nor absolute. But such discretion is founded upon and guided by a court's consideration of the prescribed statutory and common law factors.

*Enochs*, 641 F.3d at 161-62.

When deciding whether to exercise pendent jurisdiction over a state law claim, the Court must consider the following statutory factors:

> (1)     the claim raises a novel or complex issue of State law,
>
> (2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)     the district court has dismissed all claims over which it has original jurisdiction, [and]
>
> (4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Court also considers the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza*, 532 F.3d at 346. "[I]n the usual

case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586-87 (5th Cir. 1992) (punctuation omitted). No single factor is determinative, though; the Court looks to the specific circumstances of each case. *Id.* at 587.

There are no novel or complex questions of state law involved in this case, and there are likewise no exceptional circumstances compelling remand. *See* 28 U.S.C. § 1367(c)(1), (4). The Court has, however, dismissed all of the claims over which it had original jurisdiction, and state law claims now predominate this case. *See* 28 U.S.C. § 1367(c)(2)-(3). Therefore, the statutory factors are evenly split.

Comity interests weigh in favor of remand, as the Court should avoid needless decisions of state law. *Parker & Parsley*, 972 F.2d at 585. However, Alabama law applies to the substantive issues of this case, and a remand would send the case to a Mississippi court that is no better equipped to address those issues than this Court. Therefore, the comity concerns are slightly less important here than they would typically be.

The common law factors of economy, convenience, and fairness weigh in favor of retaining the case. The remaining issues in the case are ripe for summary disposition, which weighs in favor of retaining jurisdiction. *Mendoza*, 532 F.3d at 346-47. Also, the case is only two months away from trial, and this Court has substantial familiarity with it. *Id.* at 347. Moving forward in this Court would "prevent redundancy

6

and conserve scarce judicial resources." *Id.*[2]

After considering the statutory and common law factors impacting the exercise of pendent jurisdiction, the Court concludes that it should retain jurisdiction over the remaining state law claims. This case is only two months away from trial, and the parties' dispositive motions are fully briefed and ready for review. It would be a waste of resources to further delay this case. Accordingly, the Court will now address the remaining motions.

### III. RULE 56 STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627

---

[2]The Court also notes that the parties have stipulated that they agree that the Court should exercise pendent jurisdiction over the remaining state law claims. Of course, parties can not consent to subject matter jurisdiction. *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 786 (5th Cir. 2012). Nonetheless, the Court interprets their desire to try the case here as an indication of the resources they have already expended.

F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## IV. DISCUSSION

There are two dispositive motions pending: Great American's Motion for Summary Judgment [37], and Plaintiff's Motion for Partial Summary Judgment [40]. Great American argues that Scott made material misrepresentations on his coverage application, which entitled it to rescind Scott's policy.[3] Plaintiff argues, however, that 1) Scott made no misrepresentations on his application, 2) the alleged misrepresentations were not material to Great American's acceptance of risk, 3) Great American is estopped from rescinding the policy, and 4) Great American engaged in

---

[3]Great American initially argued that Plaintiff was not permitted to bring a direct action against it prior to recovering a judgment against Scott, pursuant to Alabama Code Section 27-23-2. The parties entered a stipulation in which they waived all objections and defenses based on that statute. Accordingly, the Court will not address it.

post-claim underwriting.

Great American also argues that it acted promptly and reasonably in salvaging Scott's cargo, and that, accordingly, the Court should grant summary judgment in its favor as to Plaintiff's negligence claim. In response, Plaintiff argues that Great American's salvage actions were unreasonable.

### A.   *Choice of Law*

District courts apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Under Mississippi law, a choice of law analysis is only necessary if there is a "true conflict between the laws of two states, each having an interest in the litigation." *S.C. Ins. Co. v. Keymon*, 974 So. 2d 226, 230 (Miss. 2008). If there is a true conflict between the laws of two states, Mississippi courts apply the "center of gravity," or "most significant relationship," test as set forth in the Restatement (Second) of Conflicts of Law. *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 435-36 (Miss. 2006); *Hartford Ins. Co. v. Sheffield*, 808 So. 2d 891, 895 (Miss. 2001).

The parties agree that there is a true conflict between Alabama law and Mississippi law with regard to certain issues in this case. With the exception of one issue that the Court will address below, they agree that the substantive law of Alabama governs the interpretation and application of the insurance policy at issue.

### B.   *Material Misrepresentations*

Under Alabama law, "[a]n insurance company is entitled to all material information bearing upon the obligation it undertakes in issuing a policy." *Bankers Life*

& *Casualty Co. v. Long*, 345 So. 2d 1321, 1323 (Ala. 1977); *see also Amerson v. Gardner*, 681 So. 2d 570, 573 (Ala. Civ. App. 1996) (an insurance company has the right to expect an insured to give truthful information on an application). Therefore, "Ala. Code 1975, § 27-14-7, allows an insurer to rescind an insurance policy when the applicant has misrepresented a material fact on the application." *Brown v. Am. Gen. Life & Accident Ins. Co.*, 680 So. 2d 334, 336 (Ala. Civ. App. 1996). The statute provides:

    (a)    All statements and descriptions in any application for an insurance policy . . . , or in negotiations therefor, by, or in behalf of, the insured . . . shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

        (1)    Fraudulent;

        (2)    Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

        (3)    The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required by the application for the policy or contract or otherwise.

ALA. CODE § 27-14-7(a) (2012).[4]

---

    [4]The explicit text of the statute does not appear to grant insurers the right to rescind policies for material misrepresentations on applications. Rather, it provides that insurers *may not* do so unless certain requirements are met. The Alabama Supreme Court has described the statute's function in this manner: "Because the statute, when applicable, makes an insurance policy voidable at the option of the insurer, it constitutes an affirmative defense to a claim based on the breach of an existing contract." *Patterson v. Liberty Nat'l Life Ins. Co.*, 903 So. 2d 769, 779 (Ala.

"[I]t is not necessary that the insured have made the misrepresentation with an intent to deceive; even if innocently made, an incorrect statement that is material to the risk assumed by the insurer or that would have caused the insurer in good faith not to issue the policy in the manner that it did provides a basis for the insurer to avoid the policy." *Alfa Life Ins. Corp. v. Lewis*, 910 So. 2d 757, 762 (Ala. 2005). Therefore, "[t]o invoke § 27-14-7, an insurer need establish only that a misrepresentation in the application was a material contributing influence that induced the insurer to issue policy." *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So. 2d 759, 767 (Ala. 2004).

> 1.   *Whether Scott Made a Misrepresentation*

In early April 2009, Scott spoke with James Cuda, an insurance broker who places insurance for various insurers, including Great American. Based on information provided by Scott over the telephone, Cuda completed portions of an application for insurance. However, Cuda left some of the sections blank for Scott to complete on his

---

2004). This language suggests that the statute is only applicable in cases where the material misrepresentation constitutes a breach of contract, i.e. cases where the policy grants the insurer the option of rescission when the insured has made a material misrepresentation.

   However, the Alabama Supreme Court has also interpreted the statute as "allow[ing] an insurer to rescind an insurance policy when the applicant has misrepresented a material fact on the application," implying that the right to rescind stems from the statute, rather than the contract. *Brown*, 680 So. 2d at 336; *see also Stephens v. Guardian Life Ins. Co.*, 742 F.2d 1329, 1332-33 (11th Cir. 1984) (the statute "furnishes . . . grounds for the rescission of a policy"); *Alfa Life Ins. Corp. v. Lewis*, 910 So. 2d 757, 762 (Ala. 2005) ("provides a basis for rescission of the policy under § 27-14-7"); *In re Healthsouth Corp. Ins. Litig.*, 308 F. Supp. 2d 1253, 1269 (N.D. Ala. 2004) ("Alabama statutory law provides three alternative grounds for rescission."). This seems to be the predominant view, and the one shared by the parties to this action.

own when he signed the application. Cuda faxed the uncompleted application to Scott on April 24, 2009, and instructed him to return it with payment to bind coverage.

Scott and his wife filled out the remainder of the Great American insurance application together over the telephone while he was on the road. She read the questions to him, and he told her the answers. She signed the application for him and submitted it to Great American on May 13, 2009. Scott affirmed under oath that he reviewed the information before submitting the application. In the application, Scott represented that he had not had any "policy/coverage declined, cancelled or non-renewed" in the past three years. He further represented that he had not experienced a loss in the past five years.

Great American presented undisputed evidence that Scott previously maintained a policy with Lloyd's of London that was cancelled on April 23, 2009, for his failure to pay his premium financing company. Great American also presented undisputed evidence that Scott experienced a cargo loss on April 25, 2009, when his trailer was stolen in Jacksonville, Florida. Coincidentally, he was carrying frozen chicken at the time. When he recovered his trailer, two pallets of chicken were missing, and the rest were spoiled. He filed a claim with Lloyd's of London on April 26, 2009. However, Lloyd's denied the claim on June 10, 2009, because the loss occurred after his policy had been cancelled. Therefore, Scott's application for coverage – submitted on May 13, 2009 – contained misrepresentations of fact insofar as he failed to disclose the cancellation of his Lloyd's policy on April 23, 2009, and the loss of cargo on April 25, 2009.

Plaintiff argues that Scott made no misrepresentations. First, Plaintiff contends that Scott made no representations whatsoever, as his wife signed the application. Plaintiff failed to cite any Alabama law in support of this argument, but Great American cited *Clark v. Ala. Farm Bureau Cas. Ins. Co.*, 465 So. 2d 1135, 1140 (Ala. Civ. App. 1984), a case in which the Alabama Court of Civil Appeals held that an insurance applicant "did not have to personally sign the application. His wife answered the questions posed from the application in his presence and with his acquiescence. Such act presents, if not actual authority, at least apparent authority for the wife to act in his behalf. He is thus bound by her action." Scott testified that he provided his wife with the correct answers, and that she had his permission to fill out the application and sign it on his behalf. Therefore, Scott was bound by his wife's signature.

Next, Plaintiff argues that the answers Scott gave were correct at the time he gave them, citing Cuda's testimony that he interviewed Scott in early April 2009. However, Cuda testified that he only filled in the answers in type, while Scott filled in the handwritten answers on or after April 24, 2009. The false answers to the questions about prior losses and prior cancellations were handwritten. Furthermore, it is undisputed that Scott did not submit the completed application to Great American until May 13, 2009. Therefore, there is no genuine dispute of material fact regarding this issue. Scott did not provide the false answers to Great American until May 13, 2009. At that point in time, they were clearly false.

For the above reasons, the Court finds that there is no genuine dispute of

13

material fact as to whether Scott made misrepresentations of fact on his insurance application. He did, and the Court must now determine whether those misrepresentations were material to Great American's decision to issue the policy.

### 2. *Whether the Misrepresentations were Material*

Great American presented a sworn declaration from one of its underwriters, Chris Brandser. Therein, Brandser stated that Great American's underwriting practice with respect to trucking cargo liability policies is to "select much better-than-average risks and to price above the marketplace price." Accordingly, Brandser declared that Scott's representations that he had not had any policy or coverage cancelled in the past three years, and that he had not experienced a loss in the past five years are two "of the most important factors considered in an application." If Scott had disclosed either the cancellation of his Lloyd's policy or the previous cargo loss, "the [Great American] Policy would not have been issued or, if it had, the premium would have been significantly higher, the deductible would have been significantly higher, or the limits of liability would have been significantly lower."[5]

According to Alabama Code Section 27-14-7(a)(3), an insurer may prevent recovery under a policy because of a misrepresentation in the application if the insurer "in good faith would either not have issued the policy or contract, or would not have

---

[5]Great American also produced a document containing its underwriting guidelines for trucking policies like the one at issue in this case. Plaintiff argues that the Court should exclude the underwriting guidelines because Great American did not produce it during discovery. It is unnecessary for the Court to address the issue, as Brandser's testimony regarding the materiality of the misrepresentations – without the support of the underwriting guidelines document – is undisputed.

issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount . . . if the true facts had been made known to the insurer as required by the application for the policy or contract or otherwise." ALA. CODE § 27-14-7(a)(3). A misrepresentation is material if it "would have caused the insurer in good faith not to issue the policy in the manner that it did . . . ," *Lewis*, 910 So. 2d at 762, or if it "was a material contributing influence that induced the insurer to issue policy." *Pabon*, 903 So. 2d at 767.

Great American has produced uncontradicted evidence – in the form of testimony from one of its underwriters – that Scott's misrepresentations were material to its decision to issue Scott's policy. Brandser declared that Great American would not have issued the policy, or would have issued it with a higher premium, higher deductible, or lower limits of liability, if it had known of the cancellation of Scott's Lloyd's policy. This testimony is sufficient to prove materiality under Alabama law. *See* ALA CODE § 27-14-7(a)(3); *Lewis*, 910 So. 2d at 762; *Pabon*, 903 So. 2d at 767.

Plaintiff argues that "the materiality of a misrepresentation on an application for an insurance policy is generally a jury question." *Pabon*, 903 So. 2d at 767. Plaintiff is correct. However, before the Court sends the issue to the jury, there must be a genuine dispute of material fact. FED. R. CIV. P. 56(a). Plaintiff presented no evidence whatsoever to contradict Brandser's testimony about the materiality of Scott's misrepresentations. Accordingly, the Court may consider his testimony undisputed for purposes of addressing Great American's Motion for Summary Judgment FED. R. CIV. P. 56(e)(2). Therefore, the Court finds that Scott's misrepresentations were material

to Great American's decision to issue the policy.

For all the reasons stated above, the Court finds that Scott made material misrepresentations on his policy application, which would typically entitle Great American to rescind the policy under Alabama law. *See* Ala. Code § 27-14-7; *Lewis*, 910 So. 2d at 761-62; *Brown*, 680 So. 2d at 336. However, as the Court shall presently explain, there are genuine disputes of material fact which – after being resolved by a jury – may result in Great American being equitably estopped from denying Plaintiff's claim.

## C.    *Equitable Estoppel*

Plaintiff argues that the doctrine of equitable estoppel bars Great American from rescinding the policy and denying coverage for the cargo loss. On May 20, 2009, Scott's insurance agent provided Plaintiff with a "Certificate of Liability Insurance," which represents that Scott possessed a cargo insurance policy bearing number IMP2009293, effective from May 14, 2009, through May 14, 2010, with a coverage limit of $100,000.00 per truck.[6] Plaintiff argues, therefore, that Great American is estopped from denying coverage after providing the Certificate.

Alabama's Supreme Court has defined equitable estoppel as:

. . . the principle of law by which a party who knows or should know the

_____

[6]This is the policy number and coverage limit of the Great American policy. The Court notes, however, that Great American is listed on the Certificate as "Insurer B," while Progressive is listed as "Insurer A." Both Scott's cargo liability policy (the subject policy, issued by Great American) and his auto liability policy are listed as being issued by "Insurer A" – Progressive. The parties did not address this discrepancy.

16

> truth is absolutely precluded, both in law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.

*Ellison v. Butler*, 124 So. 2d 88, 90 (Ala. 1960). The general elements of equitable estoppel are: "(1) A position of authority assumed by defendant [insurer] under the color of right; (2) submission to and reliance upon that assumption, by plaintiff [insured]; and (3) injury suffered by plaintiff as a proximate consequence of such submission and reliance." *Blue Cross & Blue Shield, Inc. v. Taylor*, 370 So. 2d 1040, 1042 (Ala. 1979) (punctuation omitted, alterations original).

There are also particular requirements for both the party to be estopped, and the party claiming estoppel. *Id.* First, with respect to the party to be estopped, there must be:

> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.

*Id.* With respect to the party claiming estoppel, the essential elements are:

> (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

17

*Id.* "The purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience." *Hillcrest Ctr., Inc. v. Rone*, 711 So. 2d 901, 907 (Ala. 1997) (punctuation omitted).

In the Court's opinion, there are genuine disputes of material fact related to the application of equitable estoppel in this case. Primarily, the Court is concerned with the practice of providing Certificates of Liability Insurance which, for all practical purposes, certify nothing. Great American correctly notes that all of the facts contained in the Certificate were true at the time it was issued, that the Certificate contains an explicit disclaimer which provide that any coverage is subject to the exclusions and limitations contained therein, and that the Certificate further provides that Great American may cancel coverage at any point during the policy period without providing notice to the recipient. However, the Court is less concerned with the Certificate's boilerplate disclaimers than it is with the practical use and effect of such Certificates.

Indeed, Alabama's law of equitable estoppel provides for consideration of the practical realities surrounding the circumstances of a case. The very name of the doctrine – *equitable* estoppel – assumes that it will be applied in a practical, rather than technical or mechanical, manner. Plaintiff has presented testimony that it routinely receives proof of liability insurance from the trucking companies with which it contracts, and that it relies on that proof in its decision as to whether it should do business with said trucking companies. The Court believes that a genuine issue of

18

material fact exists as to whether Great American's issuance of a Certificate of Insurance constitutes "conduct . . . which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which" Great American later asserted. *Taylor*, 370 So. 2d at 1042. The Court further believes that a genuine dispute of material fact exists as to whether Great American had constructive knowledge or should have known the actual facts regarding Scott's policy application. *Id.*; *Mooradian v. Canal Ins. Co.*, 130 So. 2d 915, 919 (Ala. 1961); *Ellison*, 124 So. 2d at 90. Finally, the Court believes that a genuine dispute of material fact exists as to whether Plaintiff's reliance on the Certificate was reasonable. *See Jim Walter Homes, Inc. v. Kendrick*, 810 So. 2d 645, 651 (Ala. 2001); *Hughes v. Mitchell Co.*, 49 So. 3d 192, 200-01 (Ala. 2010); *McCormack v. Amsouth Bank, N.A.*, 759 So. 2d 538, 543 (Ala. 1999).

## D.   *Post-Claim Underwriting*

Plaintiff also argues that the Mississippi's substantive law regarding the practice of post-claim underwriting is a "deeply ingrained and strongly felt public policy of this state," and that the Court should, therefore, apply and enforce Mississippi law with respect to that issue. *Boardman v. United Servs. Auto Ass'n*, 470 So. 2d 1024, 1031 (Miss. 1985). For purposes of addressing the present motions, the Court will assume that it should apply Mississippi's law regarding post-claim underwriting.

Post-claim underwriting occurs when "an insurer, rather than refusing to write a policy, will wait until after a claim is filed to deny coverage on grounds that the policy should not have been written in the first place." *Dixie Ins. Co. v. Mooneyhan*, 684 So. 2d 574, 589 (Miss. 1996) (McRae, J., dissenting). The Mississippi Supreme Court has

held:

> An insurer has the obligation to its insureds to do its underwriting at the time a policy application is made, not after a claim is filed. It is patently unfair for a claimant to obtain a policy, pay his premiums and operate under the assumption that he is insured against a specified risk, only to learn *after* he submits a claim that he is *not* insured, and, therefore, cannot obtain any other policy to cover his loss. The insurer controls when underwriting occurs. It therefore should be estopped from determining whether to accept an insured six months or more after a policy is issued. If the insured is not an acceptable risk, the application should [be] denied up front, not after a policy is issued. This allows the proposed insured to seek other coverage with another company since no company will insure an individual who has suffered serious illness or injury.

*Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 188-89 (1994). However, insurers have "the right to rely on the information supplied in the application in determining whether or not to accept the risk" posed by an applicant. *Mattox v. Western Fid. Ins. Co.*, 694 F. Supp. 210, 216 (N.D. Miss. 1988); *see also Cas. Reciprocal Exchange v. Wooley*, 217 So. 2d 632, 635 (Miss. 1969). Indeed, as this Court has previously noted, the questions on the insurance application are a form of underwriting. *Wesley v. Union Nat'l Life*, 919 F. Supp. 232, 235 (S.D. Miss. 1995).

This is not a case where the insurer failed to elicit the information it needed to decide whether to issue a policy,[7] took charge of the application and failed to accurately record the insured's answers,[8] failed to conduct any underwriting whatsoever,[9] or

---

[7]*See Mattox*, 694 F. Supp. at 217.

[8]*See Am. Income Life Ins. Co. v. Hollins*, 830 So. 2d 1230, 1235-36 (Miss. 2002).

[9]*See Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 204 (Miss. 2002).

received information that would put a prudent insurer on notice that it should inquire further.[10] Rather, Great American asked for the information it needed, and Scott provided false answers to the questions. Accordingly, Great American did not engage in post-claim underwriting.

### E.   *Negligence*

Plaintiff's negligence claim is premised upon Great American's alleged failure to promptly sell the salvaged chicken for reasonable value. There are two issues: 1) whether Great American acted quickly enough to salvage the chicken before it spoiled, and 2) whether Great American obtained reasonable value for the merchantable chicken.

The Court will address the second issue first. Plaintiff has not presented any admissible evidence indicating that the value Great American received for the salvaged chicken was unreasonable under the circumstances.[11] Accordingly, the Court grants Great American's Motion for Summary Judgment with respect that aspect of Plaintiff's negligence claim.

Next, the Court will address whether Great American acted promptly in salvaging the chicken. Neither party has provided the Court with any Alabama law

---

[10]*See Apperson v. United States Fid. & Guar. Co.*, 318 F.2d 438, 441 (5th Cir. 1963).

[11]The Court previously held that it would not consider Paragraph 7 of the affidavit of Tory Bass, a member and agent of Plaintiff, on the basis that Plaintiff had failed to lay a proper foundation for the opinion testimony. *See* FED. R. EVID. 701(a) (requiring that lay opinions be rationally based on the witness's own perceptions).

regarding what duty, if any, Great American owed to Plaintiff under these circumstances. The parties apparently agree that Great American at least owed Plaintiff a duty to act "reasonably." However, neither party has cited to any Alabama law providing guidance as to what constitutes reasonableness under these circumstances. Further, the Court has no specific evidence regarding the temperature of the chicken at any point during the events at issue, the time period the chicken remained at said temperature, or any expert testimony by which to assess those facts. The only standard the Court can apply is the vague, common-sense imperative of keeping frozen, raw chicken below a certain temperature to prevent spoiling.[12]

The break-in and theft occurred on August 9, 2009. Great American was notified of the loss on August 11, 2009. On August 12, 2009, Great American retained American Salvage Liquidators, Inc. ("American Salvage") to mitigate the loss by salvaging

---

[12]Great American previously requested that the Court strike testimony from Bass. Bass stated:

> Eagle transports or arranges for the transportation of frozen chicken on a daily basis. As a part of the business, Eagle is occasionally faced with the process of salvaging frozen chicken. Since the product is temperature sensitive, time is of the essence. It is most important to act immediately to decrease the product's exposure to elevated temperature levels and other environments which can cause loss or further spoilage.

The Court held that the testimony was admissible, as it did not constitute expert testimony or an unsupported lay opinion. For purposes of the present motion, the Court takes judicial notice of the fact that frozen, raw chicken must remain below a particular temperature to prevent spoiling.

whatever merchantable chicken remained. American Salvage contacted Scott, agreed to pay him $300.00 to deliver the chicken, and instructed him to immediately do so. However, Scott refused to immediately deliver the chicken, representing that he had to mow some lawns. Accordingly, Scott delivered the chicken to American Salvage on August 14, 2009. Of the 8,929 pounds delivered, only 4,655 pounds were merchantable. American Salvage advertised the merchantable chicken for sale, and the highest bid they received was $2,560.25 – approximately $0.55 per pound. After deducting a sales commission of $204.00 and Scott's fee of $300 for delivery, American Salvage paid $2,056.25 to Great American.

With regard to the chicken's temperature, the parties have provided next-to-nothing in the way of evidence. American Salvage's representative, Jeff Fine, stated that he believes the chicken was properly refrigerated during the time period between his first contact with Scott and delivery of the chicken. Fine's "understanding [was] that the refrigeration unit on the reefer van was turned off at or about the time of the theft, which caused the temperatures in much of the chicken to elevate to an unacceptable level." However, the Court is inclined to disregard this testimony because Fine failed to disclose the source of his understanding or belief, rendering the testimony speculative, at best.

In the end, the Court is left with following facts: 1) there was a one-day delay between Great American receiving notice of the loss and its retention of a salvor; 2) there was then a two-day delay before the chicken was delivered to the salvor; 3) these events occurred in Birmingham, Alabama in the middle of the summer; and 4) upon

delivery, over two tons (approximately half) of the chicken was spoiled. Based upon the standard of care which the parties agree applies to this issue – "reasonableness" – the Court believes that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether Great American failed to promptly salvage the chicken.

## V. CONCLUSION

For the reasons stated above, the Court **grants in part and denies in part** Defendant Great American Insurance Company's Motion for Summary Judgment [37]. The Court grants the motion with respect to Plaintiff's negligence claim stemming from Great American's alleged failure to obtain reasonable value for the merchantable chicken. However, the Court **denies** the motion in all other respects. There are obviously factual issues surrounding Plaintiff's negligence claim stemming from Great American's alleged failure to promptly salvage the leftover chicken. Furthermore, although there is no genuine dispute of material fact regarding Scott's material misrepresentations on the insurance application, there are genuine disputes of material fact regarding the use and effect of certificates of liability insurance. If these factual issues are resolved in favor of Plaintiff, the doctrine of equitable estoppel will prevent Great American from denying Plaintiff's claim on the policy, regardless of Scott's misrepresentations. Additionally, the Court **denies** Plaintiff's Motion for Partial Summary Judgment [40]; the doctrine of post-claim underwriting is not applicable here, and there are genuine disputes of material fact related to the application of equitable estoppel.

24

In light of the imminent pretrial conference, the Court extends the period of time for the parties to submit a proposed pretrial order. The parties shall provide the Court with a proposed pretrial order on or before **May 23, 2012**. Additionally, counsel should be prepared to discuss the pending motions in limine at the pretrial conference scheduled for May 16, 2012.

SO ORDERED AND ADJUDGED this 14th day of May, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE